Pro Se 5 (Rev. 12/16) Complaint for a Civil Case Alleging Negligence

# UNITED STATES DISTRICT COURT
для the

Western District of Washington

Division

|  |  |
|---|---|
| Grant H. Romaine | Case No. 2:18-cv-01772 RAJ |
| *Plaintiff(s)* | *(to be filled in by the Clerk's Office)* |
| (Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | Jury Trial: *(check one)* ☒ Yes ☐ No |
| -v- |  |
| United States of America |  |
| *Defendant(s)* |  |
| (Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) |  |

**COMPLAINT FOR A CIVIL CASE ALLEGING NEGLIGENCE**
**(28 U.S.C. § 1332; Diversity of Citizenship)**

I. **The Parties to This Complaint**

   A. **The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   | | |
   |---|---|
   | Name | Grant H. Romaine |
   | Street Address | 18661 10th Ave. NE |
   | City and County | Poulsbo, Kitsap |
   | State and Zip Code | Washington 98370 |
   | Telephone Number | 360.731-0478 |
   | E-mail Address | usshawkbill@gmail.com |

   B. **The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 5 (Rev. 12/16) Complaint for a Civil Case Alleging Negligence

    Defendant No. 1
- Name: United States of America
- Job or Title *(if known)*: United States Attorney's Office
- Street Address: 700 Stewart Street, Suite 5220
- City and County: Seattle, King County
- State and Zip Code: Washington, 98101-1271
- Telephone Number: (206) 553-7970
- E-mail Address *(if known)*:

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Under 28 U.S.C. § 1332, federal courts may hear cases in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000.  In that kind of case, called a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.  Explain how these jurisdictional requirements have been met.

### A. The Plaintiff(s)

1. If the plaintiff is an individual

   The plaintiff, *(name)* Grant H Romaine , is a citizen of the State of *(name)* Washington .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

### B. The Defendant(s)

1. If the defendant is a corporation

   The defendant, *(name)* United States of America , is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.
   Or is incorporated under the laws of *(foreign nation)* _____,
   and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

### C. The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

Prior to the two year statute of limitations date, the Plaintiff completed and submitted a Standard Form 95 with the Veterans Administration for a Tort Claim in the amount of $800,000 (Eight Hundred Thousand Dollars).

The Plaintiff cooperated with the investigating attorney by providing all request records and files and to a personal interview concerning the incident. Prior to leaving the interview the Plaintiff was told there are three prongs to the determination of a tort claim and those prongs are 1. Was something the government did cause an injury? 2. How severe is the injury? 3. How often the same procedure causes an injury?

The interviewing attorney confirmed, something the government did caused the Plaintiff's injury and the injury was extremely severe. The only thing that needed to be determined was how often the same procedure causes an injury.

In July 2018 an attorney for the Department of Veterans Affairs notified the Plaintiff the Tort Claim he had filed was being denied.  The reason given was the Department of Veterans Affairs had conducted its own investigation and determined none of their employees had done anything wrong.  The Plaintiff was also informed; his only recourse was to file a lawsuit against The United States of America.

### III.  Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

On *(date)*     09/07/2016    , at *(place)*   Seattle, Washington                                                    ,
the defendant(s): (1) performed acts that a person of ordinary prudence in the same or similar circumstances would not have done; or (2) failed to perform acts that a person of ordinary prudence would have done under the same or similar circumstances because *(describe the acts or failures to act and why they were negligent)*

**SEE ATTACHED SHEETS**

The acts or omissions caused or contributed to the cause of the plaintiff's injuries by *(explain)*

**SEE ATTACHED SHEETS**

Pro Se 5 (Rev. 12/16) Complaint for a Civil Case Alleging Negligence

IV.     **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

The Plaintiff is asking the Court / Jury award him damages in the amount of Eight Hundred Thousand Dollars, $800,000.

This amount is to compensate for the injuries sustained and emotional distress incurred due to the Defendant's negligence.  This includes lifetime observation and follow-up appointments with the Urology department and medications required to prevent further kidney problems as the result of this incident.

V.      **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

   A.     **For Parties Without an Attorney**

   I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

   Date of signing:     09 Dec, 2018

   Signature of Plaintiff      *Grant H. Romaine* (signature)
   Printed Name of Plaintiff   Grant H. Romaine

   B.     **For Attorneys**

   Date of signing:

   Signature of Attorney
   Printed Name of Attorney

Pro Se 5 (Rev. 12/16) Complaint for a Civil Case Alleging Negligence

|   |   |
|---|---|
| Bar Number | |
| Name of Law Firm | |
| Street Address | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address | |

## III.     Statement of Claim

In August, 2016 the Plaintiff went to go to the Emergency Room at the VA Hospital in Seattle with a severe pain in his side. The Plaintiff had previously been told by a gastroenterologist at the VA he had diverticulitis and if he had a recurrence of the side pain to go to the ER and tell them he needed a CT scan. The ER staff was able to see that instruction in the Plaintiff's medical records.

After the CT scan was done the Plaintiff was told his pain was not because of diverticulitis but because of a large Kidney Stone that wouldn't pass on its own and that would need to be surgically removed using a laser. The surgery was scheduled for Sept. 7, 2016 as an outpatient same day surgery.

On 9/7/16 the Plaintiff had the surgery around 3pm. After the surgery the Plaintiff was held in observation until about 7pm when he was released after being determined he was stable enough to go home. The Plaintiff was told a stent had been placed in his ureter to prevent the ureter from swelling shut during the healing process and it would be removed in 2 to 3 weeks in another same day surgery procedure.

After getting home the Plaintiff laid down until sometime around 10 pm when the pain in his side started increasing quickly.

The Plaintiff called the VA to talk to the urologist on call per the written instructions he had been given. He was not able to talk to any urologist as the number they gave him for after hours, was a call center someplace back east. They told the Plaintiff he needed to go to the local VA Emergency Room to see an urologist. When the call receiver was told it would take close to 3 hours to get to the Seattle ER, The Plaintiff was told that if the pain was as bad as he was describing (10 on a scale of 1 to 10) he should call 911.

The Plaintiff texted his daughter asking that she come back to his house as he was in excruciating pain and was going to call 911. His daughter is the one who drove the Plaintiff to and home from the hospital for the surgery as it was required he had a driver.

The Plaintiff remembers being helped into the ambulance and taken to Harrison Hospital in Bremerton. After arriving at the Harrison ER the Plaintiff has only a few 10 or 15 second memory flashes until he remembers waking up in the intensive care unit on the 9th.

After the Plaintiff was transferred out of the ICU to a semi-private room the Hospitalist, Dr. John came in and explained what had happened. He told the Plaintiff the Kidney Stone had been broken up by the laser without incident. It was when the stent was put in, the doctors (there were three there for the day surgery at the VA) didn't notice it had caused a pin hole puncture in an artery inside his kidney. During the time the Plaintiff was under observation and while going home the artery was bleeding into the kidney.

When the pressure in the kidney got too high the wall of the kidney blew out like having a "blow out" of a tire. This was Dr. Johns explanation and he drew the Plaintiff a picture of how it happened. Dr. Johns said that when the kidney blew out, other arteries also ruptured and the Plaintiff was bleeding profusely into his abdominal cavity. Dr. Johns said the Plaintiff was taken into emergency surgery to repair the wall and arteries in the kidney. Over 50% of the Plaintiff's total body blood supply bled into his body cavity.

Page **1** of **2**

During the surgery the Plaintiff needed four units of whole blood transfused into him. The surgery took over four hours to complete. Even after the surgery the first 24 hours were critical and the Plaintiff was not expected to survive.

Dr. John told the Plaintiff his convalescence time should be about 16 weeks but complete recovery could take up to a year. The Plaintiff was released from the hospital on Sept. 12th and went to recovering at home.

The week before the stent removal the Plaintiff met with Dr. Chen at the VA to discuss his most recent CT scan. In the image he pointed out the stent and kidney which he said was swollen to about four times its usual size. He said the blood that had bled into the Plaintiff's abdominal cavity was left there to be reabsorbed into his body. It wasn't drained because that would have required another incision, increasing the risk of infection. Dr. Chen told said would take up to a year for the blood to be reabsorbed and for the kidney's size to return to normal.

The Plaintiff had the stent removed at the Seattle VA hospital on 10/25/2016. The Plaintiff talked with the doctor who did the original surgery. She was amazed the Plaintiff was able to move around that soon after the emergency surgery. When the Plaintiff told her the placement of the stent is what was determined to have caused the puncture of the artery. She said it probably wasn't the stent itself, but the small thin wire that was used to put the stent in place.

The Plaintiff was told due to the rarity of my injury he would be under the care and observation of the Urology Department for the rest of his life with regular semi-annual or annual examinations.

On 9/11/2017 the Plaintiff talked with a doctor from the Urology Department for a semi-annual check. The doctor was told about the continuing pain the Plaintiff was having in his kidney. The doctor told the Plaintiff the pain probably wasn't the result of the accident and surgery but from the parts of the original kidney stone that had been blasted apart by the laser but weren't able to be removed. Part of the Plaintiff's continuing treatment is to prevent the residual pieces from growing larger and having to be surgically removed.

It is understood there was a possibility of having an injury and having to have a transfusion during the day surgery to remove the Kidney Stone.  There is no excuse for an injury caused by the surgery to go un-noticed prior to discharging the patient from the hospital.

Even though the surgical procedure was done using an endoscope, the doctors in the operating room failed to check for injuries or bleeding in the kidney or bladder prior to removing the equipment.  The nurse during the post-op observation period saw blood in the Plaintiff's urine.  Instead of investigating the cause of the blood in the urine, determined there was nothing out of the ordinary.  The time of day, the Plaintiff being the last patient before the end of the workday contributed to the negligence of failing to detect and/or diagnose the kidney was hemorrhaging.  If the hemorrhage had been detected the Plaintiff would not have been sent home where he would have died if he had passed out from the severe pain instead of being able to call 911.

**The acts or omissions caused or contributed to the cause of the plaintiff's injuries**

Even though the surgical procedure was done using an endoscope, the doctors, interns and residents in the operating room failed to check for injuries or bleeding in the kidney or bladder prior to removing the equipment.  The nurse during the post-op observation period saw blood in the Plaintiff's urine.  Instead of investigating the cause of the blood in the urine, determined there was nothing out of the ordinary.  The time of day, the Plaintiff being the last patient before the end of the workday, contributed to the negligence of failing to detect and/or diagnose the kidney was hemorrhaging.  If the hemorrhage had been detected and injury corrected, the Plaintiff would not have been sent home, where he would have died, had he passed out from the severe pain instead of being able to call 911.



**U.S. Department of Veterans Affairs**
Office of General Counsel

Torts Law Group
915 Second Avenue, Suite 1386
Seattle, WA 98174

Telephone: 202-603-4387

In Reply Refer To: GCL354360

Via Certified Mail

July 2, 2018

Grant H. Romaine
18661 10th Ave NE
Poulsbo, WA 98370

Re: Administrative Tort Claim

Dear Mr. Romaine:

The Department of Veterans Affairs (VA) has thoroughly investigated the facts and circumstances surrounding your administrative tort claim. Our adjudication of the claim included a review of your medical records and a review of the claim by a medical reviewer in a different part of the country.

The Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671-2680, under which you filed the claim, provides for monetary compensation when a Government employee, acting within the scope of employment, injures another by a negligent or wrongful act or omission. Medical negligence means there was a breach in the standard of care and that breach proximately caused an injury. The standard of care is the level at which similarly qualified medical professionals would have managed the care under the same or similar circumstances.

Our review concluded that there was no negligent or wrongful act on the part of an employee of the Department of Veterans Affairs (VA) acting within the scope of employment that caused you compensable harm. Accordingly, we deny the claim.

If you are dissatisfied with the denial of the claim, you may file suit directly under the FTCA, 28 U.S.C. §§ 1346(b) and 2671-2680. The FTCA provides that when an agency denies an administrative tort claim, the claimant may seek judicial relief in a Federal district court. The claimant must initiate the suit within six months of the mailing of this notice as shown by the date of this denial (28 U.S.C. § 2401(b)). In any lawsuit, the proper party defendant is the United States, not the Department of Veterans Affairs.

Please note that FTCA claims are governed by a combination of Federal and state laws. Some state laws may limit or bar a claim or law suit. VA attorneys handling FTCA claims work for the Federal government, and cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely,

*Lion M Wolf*
for Kristen Nelson
Deputy Chief Counsel