HONORABLE RICHARD A. JONES

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

GRANT H. ROMAINE,

10

                              Plaintiff,

11                    v.

12

UNITED STATES OF AMERICA,

13

                              Defendant.

14

15

Case No.  2:18-cv-01772-RAJ

ORDER

16

## I.   INTRODUCTION

17

        This matter comes before the Court on Defendant's Motion for Summary

18

Judgment (Dkt. #16), which Plaintiff opposes (Dkt. # 20).  Having reviewed the parties'

19

briefs and the record, the Court **GRANTS** Defendant's motion for summary judgment.

## II.   BACKGROUND

20

21

        In August 2016, Plaintiff Grant H. Romaine ("Plaintiff") went to the emergency

22

room at the U.S. Department of Veterans Affairs Puget Sound Health Care System ("VA

23

hospital") in Seattle to receive care for "severe pain in his side."  Dkt. # 1 at 6; Dkt. # 18

24

at 2.  A CT scan revealed a large kidney stone that Plaintiff was told would need to be

25

surgically broken up using a laser.  *Id.*

26

        On September 7, 2016, Plaintiff had outpatient surgery to treat the 8-10 mm

27

kidney stone.  *Id*; Dkt. # 18 at 2 ¶ 6.  Plaintiff underwent a left ureteroscopy, laser

28

ORDER – 1

lithotripsy, and had a double stent put in.  Dkt. # 18 at 2 ¶ 7.  He was held for observation for several hours until he was deemed stable and released.  Dkt. # 1 at 6.  Plaintiff was told that a stent was placed in his ureter to prevent swelling and would be removed within 2-3 weeks.  *Id*.

In his home later that evening, Plaintiff began to suffer "excruciating pain."  *Id*. He called medical providers at the VA hospital who instructed him to seek emergency care close to his home in Harrison Medical Center ("Harrison") in Bremerton.  *Id*.

At Harrison, imaging revealed an 18-centimeter subcapsular hematoma and bleeding from a renal artery.  Dkt. # 18 at 3 ¶ 12.  Plaintiff underwent emergency surgery lasting four hours, Dkt. # 1 at 7, and the bleeding was successfully treated.  Dkt. # 18 at 3 ¶ 12.  His treating doctor later told him that when his stent was put in during his prior surgery, it had punctured an artery inside his kidney, which lead to the bleeding.  Dkt. # 1 at 6.  The bleeding was significant, and Plaintiff required "four units of whole blood transfused into him."  *Id*. at 7.  He was told by his doctor that convalescence would take about 16 weeks, but complete recovery could take up to a year.  *Id*.

Plaintiff was discharged on September 12, 2016.  *Id*. at 7.  On October 25, 2016, Plaintiff's stent was successfully removed at the VA hospital.  Dkt. # 1 at 7.  Plaintiff spoke with the doctor who conducted the original surgery, and she explained that the injury was likely caused by a wire used to put the stent in place.  *Id*.  The wire, she noted, probably punctured an artery, which was not noticed during the surgery.  *Id*.  Plaintiff was told that he would be under the care and observation of the Urology Department for the rest of his life with regular semi-annual or annual exams.  *Id*.

Plaintiff filed a claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671-2680, with the Department of Veterans Affairs (the "VA").  *Id*. at 9. The VA investigated the facts alleged in his claim, conducting a review of his medical records and obtaining a review of the claim by a medical reviewer in a different part of the country.  *Id*.  Based on its investigation, the VA concluded that "there was no

ORDER – 2

negligent or wrongful act on the part of an employee of the [VA] acting within the scope of employment that caused you compensable harm" and denied the claim on July 2, 2018. *Id.*

On December 9, 2018, Plaintiff filed an FTCA action against the United States ("the Government") in this Court alleging that his injury was caused by the medical negligence of government employees. Dkt. # 1. He seeks damages in the amount of $800,000 "for the injuries sustained and emotional distress incurred due to the Defendant's negligence," as well as costs associated with "lifetime observation and follow-up appointments . . . and medications." Dkt. # 1 at 4. The Government denied Plaintiff's allegations in its response to his Complaint, Dkt. # 12, and filed a motion for summary judgment, Dkt. # 16. The Court now reviews the Government's motion for summary judgment.

### III.  LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530

ORDER – 3

U.S. 133, 150-51 (2000).

## IV.  DISCUSSION

Plaintiff's primary claim is one of medical negligence, but in his response to the motion for summary judgment, he also questions whether the health care providers properly secured informed consent prior to the procedure.  The Court will address each assertion in turn.

### A.      Medical Negligence Claim

In personal injury claims against the United States for money damages, the government is liable if  "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment" caused the injury "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346.  In a negligence claim under Washington law, the Plaintiff bears the burden of proof and must establish the elements of duty, breach, causation, and harm. *Paetsch v. Spokane Dermatology Clinic, P.S.*, 348 P.3d 389, 393 (Wash. 2015) (en banc).

In a Washington medical negligence claim specifically, a plaintiff must show that the health care provider failed to follow the accepted standard of care.  RCW 7.70.040. To do so, a plaintiff must establish that (1) the health care provider "failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances," and  (2) that "such failure was a proximate cause of the injury."  *Id*.  In addition, the Washington Supreme Court has held that "[g]enerally, expert testimony is necessary to establish the standard of care for a health care provider in a medical malpractice action."  *Miller v. Jacoby*, 33 P.3d 68, 71 (Wash. 2001); *see also Young v. Key Pharm., Inc.*, 770 P.2d 182, 189 (Wash. 1989) ("[E]xpert testimony will generally be necessary to establish the standard of care . . . and most aspects of causation . . .").  When medical facts are "observable by a layperson's

ORDER – 4

senses and describable without medical training," a plaintiff can establish the standard of care for a health care provider without expert testimony.  33 P.3d at 71.

Here, Plaintiff alleges negligence by health care providers in their failure to notice the arterial puncture inside his kidney "that caused an 18 cm left subcapsular/perinephric hematoma."  Dkt. # 20 at 3 ¶ 5.  He asserts that "there is no excuse for an injury caused by the surgery to go un-noticed prior to discharging [Plaintiff] from the hospital."  Dkt. # 1 at 7.  The doctors in the operating room were negligent, he claims, for "fail[ing] to check for injuries or bleeding in the kidney or bladder prior to removing the equipment." *Id*.  He also notes that the nurse observing him during the post-operative period noted that there was blood in his urine.  *Id*; Dkt. # 20-1 at 2.  However, he says, she failed to investigate the cause of the bleeding and "determined that there was nothing out of the ordinary."  Dkt. # 1 at 7.  Plaintiff concludes that "[i]f the hemorrhage had been detected and injury corrected, the Plaintiff would not have been sent home, where he would have died, had he passed out from the severe pain."  *Id*. at 8.

Plaintiff's medical conclusions, however, are unsupported.  The identification of his internal injury and manifestations thereof are "not within the common understanding or experience of a layperson," and Plaintiff is required, therefore, to present expert testimony to establish the standard of care.  33 P.3d at 71.  Plaintiff failed to do so. Plaintiff did not disclose any expert witness to provide medical testimony regarding the applicable standard of care in this case by the expert disclosure deadline of November 6, 2019.  Dkt. # 17 at 2 ¶ 6-7.  Plaintiff concedes this fact, explaining that he was unable to secure such a witness despite multiple attempts to do so.  Dkt. # 20 at 2 ¶ 2.

The Government obtained expert testimony from Dr. Jeffrey M. Frankel, a board-certified urologist who serves as the Medical Director for Seattle Urology Research Center and has a private urology practice.  Dkt. # 18 at 1.  Dr. Frankel reviewed the Plaintiff's medical records from the VA hospital and Harrison related to Plaintiff's initial procedure on September 7, 2016, his post-operative emergency care at Harrison, and

ORDER – 5

subsequent treatment at the VA hospital.  *Id.* at 2.  Dr. Frankel confirmed that Plaintiff's kidney stone "was appropriately treated" with the left ureteroscopy, laser lithotripsy, and placement of a double stent.  *Id.*  He noted that he did not find "any evidence of complications or deviations from the standard of care for this type of procedure" during the procedure.  *Id.*  In reviewing the postoperative recovery room records, he noted that while Plaintiff had some postoperative pain, the records indicated that he was stable.  *Id.* Significantly, Dr. Frankel noted that "[b]lood in the urine is an expected finding following a ureteroscopy, laser lithotripsy, and stent placement; and a medical provider would not anticipate a complication due to the presence of blood in the urine after such a procedure."  *Id.*

In the absence of expert testimony disputing the Government's medical expert and demonstrating that the appropriate standard of care was not met, Plaintiff has failed to establish a genuine issue of material fact as to whether any employees of Defendant had breached the standard of care.  His conclusory allegations are insufficient to defeat summary judgment.  The Court therefore **GRANTS** the Government's motion for summary judgment on this claim.

### B.    Failure to Secure Informed Consent Claim

In his response to the instant motion, Plaintiff appears to challenge for the first time whether he provided informed consented to the surgery.  Dkt. # 20 at 1 ¶ 1.  He states that he signed the consent form for surgery just before being taken to the operating room, while sedated and without access to his glasses to be able to read the form.  Dkt. # 20 at 2 ¶ 1.  He was told "there are always risks with any procedure and something could go wrong but anything going wrong was extremely unlikely."  *Id.*  Plaintiff claimed he signed the form "[b]ased on my having been sedated and reassured the chances of complications were small."  *Id.*

Plaintiff failed to assert these or any other factual allegations related to his healthcare providers' failure to secure informed consent prior to the surgery in his

ORDER – 6

Complaint, Dkt # 1, and failed to amend his Complaint to include such a claim.  The deadlines for discovery and amended pleadings have passed.  *See* Dkt. ## 14, 15.  The Court will not consider this matter raised for this first time in response to summary judgment.  *See Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings."); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (Plaintiffs are "required either (1) to plead the additional . . .  theory in their complaints, or (2) to make known during discovery their intention to pursue recovery on the . . . theory omitted from their complaints.").

## V.   CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the Government's motion for summary judgment.

DATED this 22nd day of September, 2020.

The Honorable Richard A. Jones
United States District Judge

ORDER – 7